**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jaime Enrique C.A.,

Petitioner,

v.

Todd Blanche, et. al.,

Respondents.

No. 26-cv-3433 (KMM/DLM)

**ORDER**

---

Federal immigration authorities have detained Jaime Enrique C.A. ("Mr. C.A." or "Petitioner") since July 26, 2026. On July 28, 2026, Mr. C.A. filed a Petition seeking a Writ of Habeas Corpus, which is now before the Court. (Dkt. 1.) For the following reasons, the Petition is granted in part, and Respondents are required to provide Mr. C.A. with an individualized bond hearing within fourteen days of this Order.

## BACKGROUND

Jaime Enrique C.A. is a citizen of Ecuador who has lived in the United States with his family since 2022. (Dkt. 1 ¶ 21.) Mr. C.A. entered the United States without inspection at an unknown location. (*See* Dkt. 6–1 at 1 (notice to appear asserting unknown entry); *see also* Dkt. 5 at 1.) He now lives in Columbia Heights, Minnesota with his partner and their seven-year-old son. (Dkt. 1 ¶ 21.) Prior to his detention, Mr. C.A. worked as a delivery driver, was taking English classes and was regularly attending mass at his local church. (*Id.* ¶ 22–23.)

On July 26, 2026, Immigration and Customs Enforcement ("ICE") officers were performing a records check on a vehicle in Hudson, Wisconsin, where they identified Mr. C.A. and learned that he was in the U.S. without admission. (Dkt. 6–3 at 2.) Mr. C.A. was then transferred to Fort Snelling, MN for processing. (Dkt. 5 at 2.)

Mr. C.A. filed this habeas corpus petition on July 28, 2026. He claims that he is being detained in violation of his right to due process of law under the Fifth Amendment because he is being detained without any individualized consideration of whether his detention serves a legitimate purpose.[1] He seeks immediate release or, alternatively, a custody redetermination hearing at which an immigration judge ("IJ") considers whether his release pending the completion of removal proceedings would create a flight risk or pose a public safety threat. The Court holds that due process requires that Mr. C.A be given a custody redetermination/bond hearing.

**DISCUSSION**

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp.

---

[1] Petitioner initially asserted that he was arrested without a warrant. (Dkt. 1 ¶ 25.) He asserted a claim that his warrantless arrest was unlawful, requiring his immediate release. (Dkt. 1 ¶¶ 43–50.) However, Respondents allege that they had a warrant for his arrest at some point during the arrest process. (Dkt. 5 at 2; Dkt. 6–2.) Petitioner did not respond to this showing or further develop any argument on his warrantless-arrest claim. In light of this record and the fact that it is granting relief on other grounds, the Court declines to consider whether he was arrested pursuant to a valid I-200 warrant.

3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## I. Due Process

Respondents invoke 8 U.S.C. § 1225(b)(2) to justify Mr. C.A.'s detention without a bond hearing, and the Eighth Circuit has recently approved application of that statutory provision to any alien who is present in the United States without having been admitted or paroled into the country. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). But *Avila* does not address any limitations upon that detention authority that may be imposed by the U.S. Constitution. *Id.* at 1140 & n.8 (Erickson, J., dissenting); *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *2 (D. Minn. July 2, 2026). Subject to a provision that mandates detention across the board, Mr. C.A. argues that he is deprived of due process of law because he does not receive an individualized assessment of whether *his* detention is necessary. The Court agrees.

### A. The Due Process Clause Applies to Petitioner

Under the Fifth Amendment's Due Process Clause, "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. That protection from deprivation extends to all persons, including noncitizens who entered the United States unlawfully. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that the due process clause applies to every person in the United States "whether their presence here is lawful, unlawful, temporary, or permanent"); *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056, at *2 (D. Minn. Apr. 14, 2026). The fact that

Mr. C.A. entered the United States without inspection or admission and lacks legal status does not mean that the protections of the Due Process clause do not apply to him. And because he has lived in the United States for nearly a decade, if the government seeks to deprive Mr. C.A. of his liberty, the Due Process Clause entitles him to some process.

That is so because "[f]reedom from physical restraint 'lies at the heart of the liberty' that the Due Process Clause protects." *Felipe S.P.*, 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690). Indeed, freedom "from physical detention is the most elemental of liberty interests." *Id.* (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion)). And while it is true that "Congress has plenary power over immigration, and the Executive Branch has broad discretion in enforcing immigration laws[,] . . . the exercise of that power must comply with the Constitution." *Id.* at *2 (citations and quotations omitted). "Detention is a constitutionally permissible part of removal proceedings. . . . But in this context, it implicates an important liberty interest protected by the Due Process Clause, so it must serve a constitutionally acceptable purpose." *Id.* (cleaned up).

The Supreme Court has made clear that outside of detention in connection with criminal proceedings, when the government seeks to deprive a person of liberty in a civil matter,[2] the Due Process Clause allows it to do so only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's

[2] Removal proceedings are "a civil, not criminal, matter," *Arizona v. United States*, 567 U.S. 387, 396 (2012), and "[u]nlawful presence within the United States, by itself, is not a criminal offense," *Anthony Javier R.M. v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306, at *5 (D. Minn. May 29, 2026).

constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). And so, the question becomes what constitutionally acceptable purpose is served by the detention of an alien under 8 U.S.C. § 1225(b)(2)—the authority the government invokes here. In the immigration context, the Supreme Court has recognized that the government's interests in preventing flight risks and protecting the community may support detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Like other courts have recently found, this Court finds the government's interests in "[e]nsuring appearance at future proceedings and limiting threats to public safety are interests that can justify detaining noncitizens like [Mr. C.A.]" *Felipe S.P.*, 2026 WL 1911656, at *4; *Anthony Javier R.M.*, 2026 WL 1506306, at *9. And in this case, Mr. C.A.'s claim is that "by denying him *any* procedure for assessing his danger or flight risk, the government has taken his liberty in violation of the Due Process Clause." *Felipe S.P.*, 2026 WL 1911656, at *4.

**B. *Demore*, *Banyee*, and *Thuraissigiam***

Respondents argue that Mr. C.A.'s due process claim is foreclosed by three cases from the Supreme Court and the Eighth Circuit: *Demore v. Kim*, 538 U.S. 510 (2003); *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020); and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). But the Court finds that these cases do not preclude a ruling in Petitioner's favor on his due process claim for largely the same reasons articulated by United States District Judges Laura M. Provinzino in *Anthony Javier R.M.*

*v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026), and Nancy E. Brasel in *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026).

***Demore* and *Banyee***

Turning first to *Demore* and *Banyee*, the Court concludes that neither decision forecloses Mr. C.A.'s due process claim for two reasons. First, those cases both considered a different provision of the Immigration and Nationality Act, and that difference matters. Both *Demore* and *Banyee* addressed due process challenges to the mandatory detention scheme established by 8 U.S.C. § 1226(c).[3] Unlike the detention authorized by § 1225(b)(2), under section 1226(c) detention is required pending the completion of removal proceedings for certain "criminal aliens." *See Demore*, 538 U.S. at 513. In relevant part, § 1226(c) provides that the Secretary of Homeland Security "shall take into custody" noncitizens with specific criminal histories, including those who have "committed" crimes of moral turpitude or aggravated felonies. 8 U.S.C. § 1226(c)(1)(B)–(C) (cross-referencing, *inter alia*, 8 U.S.C. § 1227(a)(2)(A)(i)–(ii)).[4]

---

[3] The record reflects that Mr. C.A. has one conviction for driving while impaired from November 2023. There is no suggestion that he is subject to mandatory detention under § 1226(c).

[4] Section 1226(c) now also requires DHS to detain noncitizens who have been charged with, arrested for, or convicted of "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer, or any crime that results in death or serious bodily injury to another person" 8 U.S.C. § 1226(c)(1)(E)(ii). These provisions were added to § 1226(c) in January 2025 as part of the Laken Riley Act, Pub. L. No. 119-1, 130 Stat. 3 (2025). Both *Banyee* and *Demore* addressed older versions of the statute.

Both petitioners in *Demore* and *Banyee* had been convicted of at least one aggravated felony. *Demore*, 538 U.S. at 513; *Banyee*, 115 F.4th at 930. The discussion in *Anthony Javier R.M.* aptly describes the context of *Demore* and *Banyee*:

> In *Banyee*, the petitioner, a lawful permanent resident, was convicted of armed robbery. *See* 115 F.4th at 930. He was placed in removal proceedings and detained under Section 1226(c). *Id.* Although he was initially granted cancellation of removal by an immigration judge, the BIA reversed and remanded. *Id.* On remand, the petitioner was ordered removed by the immigration judge, and he appealed the order of removal to the BIA. *See id.* The petitioner, who by this point had been detained in a county jail for one year, sought habeas relief while that appeal was pending, challenging his "lengthy detention" during the removal proceedings on due process grounds but not "directly contesting the grounds for his mandatory detention." *Id.* at 930–31. The Eighth Circuit rejected the petitioner's argument, concluding that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (alteration in original) (quoting *Demore*, 538 U.S. at 526).
>
> Similarly, in *Demore*, the petitioner had been convicted of at least one aggravated felony offense. 538 U.S. at 513. He did not "dispute the validity of his prior convictions" or the government's "conclusion that he [was] subject to mandatory detention under § 1226(c)," and he "conced[ed] that he was deportable." *Id.* at 513–14. Instead, the petitioner argued that his detention under Section 1226(c) violated the Due Process Clause because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court rejected the petitioner's argument and affirmed that his detention without a bond hearing was constitutionally permissible. *See id.* at 530. Critical to *Demore*'s holding—and *Banyee* to the extent it relies on *Demore*—was Congress's reliance, in enacting Section 1226(c), on findings supporting its "justifiabl[e] concern[ ] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." *Id.* at 513. The Supreme Court therefore reasoned

> that the "narrow detention policy reflected in 8 U.S.C. § 1226(c)," as applied to the class of criminal noncitizens in removal proceedings, was constitutionally permissible because "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 526, 528. In effect, the consideration of dangerousness and risk of nonappearance is already baked into Section 1226(c).

*Anthony Javier R.M.*, 2026 WL 1506306, at *4.

From this background, Judge Provinzino observed that because the version of § 1226(c) in effect "when *Demore* and *Banyee* were decided" focused on the mandatory detention of noncitizens "who had been convicted of criminal offenses," and had received procedural protections from the criminal justice system, the due process concerns raised by that subsection's mandatory detention scheme were lessened. *Id.* (quoting *Demore*, 538 U.S. at 513, and citing *Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *12 (W.D. Tex. Mar. 13, 2026) (noting that "the convictions themselves may stand in for the individualized determination that might otherwise be taken up at a bond hearing, by demonstrating either that the noncitizen is a danger to the community or a flight risk")); *see Felipe S.P.*, 2026 WL 1911656, at *4 (stating that the criminal convictions identified by Congress in § 1226(c) "were adjudicated with the full procedural protections of the criminal justice system").

In contrast, under § 1225(b)(2), there are no baked-in procedural protections attendant to an underlying criminal proceeding because that provision "requires only a determination that a noncitizen is an 'applicant for admission' who is 'not clearly and beyond a doubt entitled to be admitted.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *5.

Moreover, there are no "congressional findings under Section 1225(b)(2) like those discussed in the context of Section 1226(c) suggesting that a noncitizen who . . . has not been convicted of any criminal offense, and who is detained under Section 1225(b)(2) based on his allegedly unlawful presence in the United States, is likely to be a flight risk or a danger to the community." *Id.* (citing *Demore*, 538 U.S. at 518–21; S. Rep. No. 104-48, at 32 (1995) ("Congress should consider requiring that aggravated felons be detained pending deportation. Such a step may be necessary because of the high rate of no-shows for those criminal aliens released on bond.")); *Felipe S.P.*, 2026 WL 1911656, at *5 ("[U]nlike Section 1226(c), Section 1225(b)(2) is not accompanied by evidence-based congressional determinations about the need to detain all noncitizens in deportation proceedings."); *see also Manuel G. v. Blanche*, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *3–4 (D. Minn. May 7, 2026) (distinguishing *Banyee* and *Demore* and finding they do not foreclose a due process challenge to mandatory detention under § 1225(b)(2)).

Both *Demore* and *Banyee* addressed the due process concerns that are presented by mandatory detention for a class of criminal noncitizens who have already received significant process through the criminal justice system and for whom the risks caused by their release were already the subject of congressional findings. The rationale underlying the conclusions in those cases that the Due Process Clause requires no individualized determination for such detainees does not map onto the entire class of noncriminal applicants for admission who are now subject to mandatory detention under § 1225(b)(2) in the Eighth Circuit.

*Demore* and *Banyee* do not control the due process claim at issue for a second reason as well. Both cases considered whether the due process clause placed a limit on how long a noncitizen could be detained pursuant to § 1226(c). The court in *Banyee* described the question before it as "whether the year-long detention violated [petitioner's] rights . . . ." 115 F.4th at 931. Emphasizing the necessarily finite nature of § 1226(c) detention pending removal proceedings, the court found that Banyee's prolonged detention did not do so. *Id.* at 931–33. The court expressly rejected a multi-factor test which had been applied by the district court to determine when detention had become unconstitutionally long. *Id.* at 933 (finding "no room for a multi-factor 'reasonableness' test").

The *Demore* Court was likewise tasked with assessment of whether detention pending removal of "criminal aliens" violated due process and specifically noted that the average length of such detention was 47 days.[5] 538 U.S. at 529. The Court noted that this was shorter than the length of time presumptively allowed to effectuate removal in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 528–29. Perhaps because Congress had already balanced the risk of flight and community danger risks presented by the "criminal alien" habeas petitioners in *Banyee* and *Demore*, the question in those cases focused on whether detention during removal proceedings could violate due process because of its duration; in contrast to this case, the central question was not whether the detentions violated the due process clause at their inception.

---

[5] In its briefing to the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2019), the government later confirmed that "the statistics it gave to the Court in *Demore* were wrong," and "[d]etention normally lasts twice as long as the Government then said it did." *Id.* at 343 (Breyer, J., dissenting). The Court suspects those delays are even longer today.

For these reasons, the Court concludes that Mr. C.A.'s due process claim is not precluded by *Banyee* or *Demore*.

***Thuraissigiam***

Respondents also cite *Thuraissigiam* for the proposition that a noncitizen in Petitioner's position has only those rights that Congress has provided by statute. (Dkt. 5 at 11–13.) The Court disagrees. *Thuraissigiam* does not undermine Mr. C.A.'s due process claim because: (1) the petitioner there did not challenge the legality of his detention, but instead sought judicial review of the government's determination that he was ineligible for asylum; and (2) "*Thuraissigiam*'s holding, by its own language, is limited to noncitizens at the border—that is, those who are 'seeking initial entry.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *6 (quoting *Thuraissigiam*, 591 U.S. at 139–40). By contrast, Mr. C.A. is not challenging his removability but instead raises a core habeas challenge, arguing only that his current detention is unlawful because he has not been given due process protection related to that detention. *Id.* (distinguishing *Thuraissigiam* because Anthony Javier R.M. "directly challenge[d] the lawfulness of his detention without a bond hearing"). In addition, Mr. C.A. has been in the United States for approximately four years, during which he has undoubtedly developed ties to the community. *Id.* (observing that the "circumstances of Anthony Javier R.M.'s presence in the United States" entitled him to greater protections than one who has never established connections with this country and that "*Thuraissigiam* itself suggests that this distinction is material"); *see also Felipe S.P.*, 2026 WL 1911656, at *6 (finding *Thuraissigiam* "inapplicable" for the same reasons). For these reasons, *Thuraissigiam* does not foreclose Petitioner's due process claim.

Ultimately, the Court concludes that none of the cases on which Respondents rely preclude Mr. C.A.'s claim that he is due greater process than he has received before he can continue to be detained.

### C. The *Mathews* Balancing Test

To resolve Mr. C.A.'s due process claim, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Anthony Javier R.M.*, 2026 WL 1506306, at *8–10 (applying *Mathews* to a similar claim); *Felipe S.P.*, 2026 WL 1911656, at *7–10 (same). Before doing so, however, the Court will address Respondents' threshold contention that the *Mathews* framework is inapplicable in this context.

In essence, Respondents' argue that the *Mathews* test is only applicable to assess whether the procedural process provided by the government is adequate to protect rights or interests awarded *by statute*. (*See* Dkt. 5 at 6–7 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) and arguing that a procedural due process analysis cannot address any factor that is irrelevant to the statutory scheme).) Though the *Mathews* test was created in a case assessing deprivation of a statutorily created right, it cannot be that rights created by statute are granted procedural protections when a right expressly enumerated in the Constitution is not. As Judge Brasel explained in *Felipe S.P.*, "[b]ecause the fundamental interest at issue here—freedom from bodily restraint—is expressed in the Due Process Clause, government detention violates the Clause except in certain special and narrow nonpunitive circumstances." 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up).

Moreover, the Supreme Court has repeatedly made clear that the protections of the Due Process Clause apply to persons here illegally: "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases). Respondents' position that aliens without permission to be here do not have any liberty interest beyond that afforded to them by statute runs afoul of this jurisprudence. So, the undersigned joins the "federal courts around the country apply[ing *Mathews*] when analyzing what process the government owes noncitizens detained during removal proceedings, including those detained under Section 1225(b)(2)." *Felipe S.P.*, 2026 WL 1911656, at *7; *see also id.* at *7 n.4 (collecting cases).[6]

Turning to application of *Mathews* itself, the test requires balancing three considerations: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative

---

[6] Although Respondents criticize the use of the *Mathews* test in this context, they do not suggest an alternative framework. Instead, it appears that they dispute fundamentally whether a liberty interest exists at all for noncitizens outside of one afforded by statute. The Court observes that the Third Circuit has adopted a different multi-factor test to consider due process issues in the context underlying *Banyee*, namely when detention of criminal aliens pursuant to 8 U.S.C. § 1226(c) becomes unreasonably prolonged. *German Santos v. Warden*, 965 F.3d 203, 211 (3d Cir. 2020) (applying a four-factor reasonableness test). Both frameworks rely on the same premise: that the due process clause protects a liberty interest for detained noncitizens, but given that *German Santos* is trying to assess when that detention becomes unlawful due to its duration, additional considerations are required.

burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

First, as already explored above, the Court finds that continued detention of Petitioner implicates a serious liberty interest. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (explaining that the petitioner's "'interest in being free from physical detention' by the Government 'is the most elemental of liberty interest'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). In light of Petitioner's continued detention in the Sherburne County Jail (Dkt. 1 ¶ 4), the Court finds that the first factor weighs in Mr. C.A.'s favor. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (finding the first *Mathews* factor weighed in the petitioner's favor).

Next is the risk of erroneous deprivation of this liberty interest. In the detention context, "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). As discussed above, the interests at issue here are: (1) ensuring that the noncitizen will appear for immigration proceedings; and (2) preventing danger to the community. *See Jennings*, 583 U.S. at 286 ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Here, it is evident that there is no way of determining whether either of these two goals are advanced by Mr. C.A.'s detention without an individualized assessment of his case. The simple fact that, as interpreted by *Avila*, Mr. C.A. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), isn't enough. To date Respondents have

not given Mr. C.A. any individualized review with respect to the need for his detention, and he has not received a hearing to contest whether his detention is necessary.

Relying on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), Respondents argue that the only relevant consideration for purposes of due process is whether there is a risk that Petitioner would be erroneously classified as an "applicant for admission" who had not been admitted or paroled, so an evaluation of dangerousness and risk of flight is irrelevant. (Dkt. 5 at 9.) This argument is unavailing for at least two reasons. First, *Doe* involves an altogether different context. The plaintiff in *Doe* challenged the constitutionality of a state law requiring him to register as a sex offender based upon a prior conviction. 538 U.S. at 4. Doe claimed only that requiring him to register in this way resulted in reputational harm, not that it implicated his interest in freedom from confinement. *Id.* at 6–7 (noting that Supreme Court precedent had not recognized a liberty interest in reputational harm so the entitlement at issue was that afforded by statute, and the due process must only "protect" that). By contrast, Mr. C.A.'s claim in this case directly implicates his fundamental interest in physical liberty. *See Manuel G.*, 2026 WL 1256358, at *4 (rejecting an identical argument based on *Doe*); *see also Noguez Estrada v. Warden*, No. 5:26-CV-00359, 2026 WL 1270556, at *2 (S.D. Tex. Apr. 2, 2026) (explaining that *Doe* (and other cases) did "not consider the right to liberty and the freedom from imprisonment guaranteed by the Fifth Amendment of the Constitution"). Second, as explored above, the Court disagrees that the INA alone sets the floor for the due process that is required; the Constitution can, and does, require more. *See, e.g.*, *Zadvydas*, 533 U.S. at 690; *Felipe S.P.*, 2026 WL 1911656, at *2.

Ultimately, this Court agrees with others that have found there is a high risk of erroneous deprivation of liberty in this context without an individualized bond hearing to assess whether Mr. C.A.'s detention is necessary to ensure his appearance for immigration proceedings and prevent danger to the community. *Anthony Javier R.M.*, 2026 WL 1506306, at *9; *Felipe S.P.*, 2026 WL 1911656, at *8–9; *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *3 (D. Minn. Apr. 23, 2026); *Manuel G.*, 2026 WL 1256358, at *4–5; *Mejia-Briones v. Warden*, No. 1:26-CV-1109-RP, 2026 WL 1245750, at *3 (W.D. Tex. May 5, 2026) ("The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'").

Finally, the third *Mathews* factor concerns the government's interest, including the administrative burdens that additional procedures would impose. Respondents assert that government has an interest in uniformly administering the nation's immigration laws, ensuring that noncitizens like Mr. C.A. are available during removal proceedings, and preserving the detention framework that Congress established under § 1225(b)(2), and in doing so efficiently. (Dkt. 5 at 9–10.)

The Court acknowledges that these are important government interests. The Court also does not overlook that concluding the Due Process Clause requires Respondents to hold a bond hearing in this context could increase the government's burden. But until the Eighth Circuit's recent decision in *Avila*, the government routinely provided such bond hearings for detainees like Mr. C.A. and had done so for decades. And in the Circuits which

have reached the opposite decision, they continue to do so. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 72–73 (2d Cir. 2026) (finding that 8 U.S.C. § 1226(a), which includes a provision authorizing release on bond, applied to noncitizens who are present in the U.S., but charged as inadmissible for entering without inspection and admission). There is no suggestion in the record that the burden is unmanageable.

The government's interest in uniformly applying the law is also a valid concern. But again, other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in *Avila*. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1171 (9th Cir. 2026) (collecting circuit court decisions that have concluded that § 1225(b)(2)(A) does not apply to unadmitted noncitizens apprehended inside the United States); *Cirrus Rojas v. Olson*, No. 25-3127, 183 F.4th 909, 914 n.1 (7th Cir. July 30, 2026) (same). Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances to Mr. C.A. in other districts, and requiring them to do so for him will not significantly change that landscape. Ultimately, the Court is not persuaded that these considerations outweigh Petitioner's substantial liberty interest.

For these reasons, the Court finds that Mr. C.A. has shown his due process rights are violated by his continued detention without additional procedural protections. The Court further finds: (1) that an individualized bond hearing is required at which an immigration judge assesses whether his release would pose a risk of flight or a danger to the community; (2) Mr. C.A. is entitled to advance notice of the hearing sufficient to allow his counsel to attend and prepare; and (3) any decision to retain Mr. C.A. in custody after the bond hearing must set forth the reasons for his continued detention. If Respondents fail

to provide Mr. C.A. with such a bond hearing within fourteen days, they must release him from detention.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Petition (Dkt. 1) is **GRANTED IN PART** as follows:

    a. Petitioner's detention under § 1225(b)(2) without an individualized bond hearing violates his due process rights.

    b. Respondents shall provide Petitioner with a bond hearing at which an individualized assessment is made regarding his risk of flight and whether releasing him will pose a danger to the community. This hearing must take place **within two weeks from the date of this Order**. Respondents must provide Mr. C.A. and his counsel with advanced notice of the hearing promptly after it is scheduled, sufficient to allow his counsel to attend and prepare.

    c. If a bond hearing does not take place within two weeks, or if the Immigration Judge declines to reach the merits of the issue or determines that they lack the authority to do so, the Respondents shall immediately release Petitioner from custody in Minnesota with his personal effects.

2. Respondents shall file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions related to release.

**Let Judgment be entered accordingly.**

Date: September 22, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge